IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| VERONICA B., § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| V. § | No. 3:19-cv-1107-L-BN | |
| § | | |
| ANDREW M. SAUL, § | | |
| Commissioner of Social § | | |
| Security Administration, § | | |
| § | | |
| Defendant. § | | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE**
<u>**UNITED STATES MAGISTRATE JUDGE**</u>

This case has been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from United States District Judge Sam A. Lindsay. *See* Dkt. No. 4.

Plaintiff Veronica B. seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). *See* Dkt. No. 17.

The Commissioner has filed his response in opposition. *See* Dkt. No. 18. Plaintiff has not filed a reply, and the deadline to do so has passed.

For the reasons explained below, the hearing decision should be reversed.

**Background**

Plaintiff alleges that she is disabled due to degenerative disc disease, asthma, and obesity. *See* Dkt. No. 11-1 at 16.

After Plaintiff's application for a period of disability and disability insurance benefits were denied initially and on reconsideration, Plaintiff requested a hearing

1

before an administrative law judge ("ALJ"). That hearing was held on July 13, 2018. *See* Dkt. No. 11-1 at 153-92.

At the time of the hearing, Plaintiff was 50 years old. *See id.* at 157. She is a high school graduate and attended college. *See id.* at 173. Plaintiff testified that she received a certification in business administration and cosmetology, and she also obtained a nurse's aid certification. *See id.*

Plaintiff has worked as a cashier and a door-to-door advertisement distributor. *See id.* at 160-161. Plaintiff has not engaged in substantial gainful activity since December 19, 2015. *See id.* at 16.

The ALJ found that Plaintiff was not disabled and therefore not entitled to SSI benefits. *See id.* at 16-26. Although the ALJ found that Plaintiff's severe impairments included "degenerative disc disease, asthma, and obesity," *see id.* at 16, the ALJ nonetheless concluded that these impairments did not meet or equal the criteria of a severe impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1, *see id.* at 18.

The ALJ further determined that Plaintiff had the residual functional capacity to perform light work with the following restrictions:

> The claimant can occasionally climb ramps and stairs; but never ladders, ropes or scaffolds; and can occasionally balance, stoop, kneel, crouch, and crawl. The claimant must avoid concentrated exposure to extremes of heat and cold, as well as avoid concentrated exposure to breathing irritants, such as dust, fumes, odors, and gases.

*Id.* at 18.

Given Plaintiff's age, education, and exertional capacity for light work, the ALJ determined that Plaintiff is not disabled and is otherwise capable of making a successful adjustment to such work. The ALJ concluded that Plaintiff did not have

past relevant work but that she would be able to perform the requirements of representative occupations such as a price marker, a fitting room attendant, or a fast food cashier. *See* Dkt. No. 11-1 at 22.

Plaintiff appealed that decision to the Appeals Council. The Council affirmed.

Plaintiff then filed this action in federal district court. Plaintiff's only ground for appeal is that the Commissioner failed to provide Plaintiff with a constitutionally appointed ALJ. *See* Dkt. No. 17 at 1.

The Commissioner does not dispute that the ALJ that handled Plaintiff's case was not constitutionally appointed. *See* Dkt. No. 18. The Commissioner's only argument against remand is that Plaintiff did not raise the appointments clause claim during the administrative process and therefore waived the argument. *See id.*

The undersigned concludes that the hearing decision should be reversed and this case remanded to the Commissioner of Social Security for further proceedings consistent with these findings and conclusions.

**Legal Standards**

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether Commissioner applied the proper legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S.

389, 401 (1971); *accord Copeland*, 771 F.3d at 923. The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo*. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Copeland*, 771 F.3d at 923; *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). The Court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

"In order to qualify for disability insurance benefits or [supplemental security income], a claimant must suffer from a disability." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)). A disabled worker is entitled to monthly social security benefits if certain conditions are met. *See* 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *See id.* § 423(d)(1)(A); *see also Copeland*, 771 F.3d at 923; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).

"In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment

prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007).

The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. *See Copeland*, 771 F.3d at 923; *Audler*, 501 F.3d at 448. A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Copeland*, 771 F.3d at 923; *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id.* However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows that the ALJ failed to

5

fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *see Audler*, 501 F.3d at 448. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22. Put another way, Plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

## Analysis

Plaintiff challenges the legal authority of the ALJ assigned to her case under the Supreme Court's decision in *Lucia v. SEC*, 138 S. Ct. 2044 (2018), arguing the ALJ was not properly appointed under the U.S. Constitution's Appointments Clause. *See* Dkt. No. 17.

"The Appointments Clause of the Constitution lays out the permissible methods of appointing 'Officers of the United States,' a class of government officials distinct from mere employees." *Lucia*, 138 S. Ct. at 2049 (citing Art. II, § 2, cl. 2). In *Lucia*, the Supreme Court held that ALJs are "Officers of the United States" within the meaning of the Appointments Clause. *Id.* at 2055. The Supreme Court has previously held that "one who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case" is entitled to relief in the form of a new "hearing before a properly appointed" official. *Ryder v. United States*, 515 U.S. 177, 182–83 (1995). In *Lucia*, the Supreme Court clarified that the new

official cannot be the improperly appointed official, even if the official has since obtained a constitutional appointment. *See* 138 S. Ct. at 2055. Accordingly, "[t]o cure the constitutional error, another ALJ (or the [executive agency] itself) must hold the new hearing to which [the claimant] is entitled." *Id.*

Plaintiff, relying on *Lucia,* claims that the ALJ is an officer of the United States and, according to the Appointments Clause, must be appointed by either the President, the courts of law, or the head of a department. *See* Dkt. No. 17 at 3-9. Plaintiff argues that the ALJ who conducted the hearing and issued the decision in this case was not properly appointed under the Appointments Clause at the time of the hearing and thus did not have legal authority to preside over this matter. *See id.*

In the Commissioner's response, he does not contest that the ALJ was not duly appointed but instead argues that, regardless of whether the ALJ was properly appointed in accordance with the Appointments Clause, Plaintiff waived this challenge by failing to raise it at the administrative level. *See* Dkt. No. 18 at 6-15. In other words, the Commissioner argues, Plaintiff's challenge is not timely because Plaintiff failed to exhaust her remedies at the administrative level.

Although the United States Court of Appeals for the Fifth Circuit has not decided the issue, the United States Court of Appeals for the Third Circuit recently decided against an exhaustion requirement for Appointments Clause challenges. In *Cirko v. Commissioner of Social Security,* 948 F.3d 148 (3d Cir. 2020), the Court of Appeals held that

> there is no statutory or regulatory exhaustion requirement that governs SSA proceedings. Thus, whether we should impose an

> exhaustion requirement here "is a matter of sound judicial discretion." *Cerro Metal Prods. v. Marshall,* 620 F.2d 964, 970 (3d Cir. 1980). To determine whether to impose an exhaustion requirement where we have not done so before, we must assess (a) the "nature of the claim presented," (b) the "characteristics of the particular administrative procedure provided," and (c) the proper "balance [between] the interest of the individual in retaining prompt access to a federal judicial forum [and] countervailing institutional interests favoring exhaustion." *McCarthy v. Madigan,* 503 U.S. 140, 146 (1992). As explained below, each of these considerations supports the conclusion that exhaustion of Appointments Clause claims is not required in the SSA context.

2020 WL 370832 at *2. The Third Circuit panel first explained that the nature of

Appointments Clause claims do not favor exhaustion:

> As a general matter, exhaustion is appropriate for certain claims involving "exercise of the agency's discretionary power or when the agency proceedings in question allow the agency to apply its special expertise." *Id.* at 145. But exhaustion is generally inappropriate where a claim serves to vindicate structural constitutional claims like Appointments Clause challenges, which implicate both individual constitutional rights and the structural imperative of separation of powers. *Glidden Co. v. Zdanok,* 370 U.S. 530, 536-37 (1962).

*Id.* The Court of Appeals next turned to the characteristics of SSA review and found

that,

> [l]ike Appeals Council hearings, ALJ hearings have no express exhaustion requirement. *See, e.g, McWilliams v. Berryhill,* No. 18-5180, 2019 WL 2615750, at *8 (E.D. Pa. June 26, 2019) ("No matter how tortured the reading, the SSA regulations fail to squarely address [exhaustion]."). And like Appeals Council hearings, ALJ hearings are inquisitorial and driven by the agency rather than the claimant: Whereas ALJs must "look[] fully into the issues," "[a]ccept[] as evidence any documents that are material to the issues," and "decide when the evidence will be presented and when the issues will be discussed," 20 CFR § 404.944, claimants need not even state their case or present written arguments. *See id.* § 404.949.

*Id.* at *4. The Third Circuit in *Cirko* held that the characteristics of SSA review weigh against an exhaustion requirement for Appointments Clause challenges.

Next, the panel balanced the individual and governmental interests and found that

> an exhaustion requirement for Appointments Clause claims would impose an unprecedented burden on SSA claimants who are subject, not to an adversarial process, but to an inquisitorial review process.
> While exhaustion may be broadly required in an agency where "it is usually 'appropriate under [the agency's] practice' for 'contestants in an adversary proceeding' before it to develop fully all issues there," the SSA's inquisitorial system does not fit that description.

*Id.* (internal citations omitted). And

> an exhaustion requirement would prejudice those claimants who go unrepresented at their ALJ hearings and then, perhaps with the benefit of counsel, seek to raise such a claim in federal court. These *pro se* claimants already face "a disadvantage in the unfamiliar world of law because they lack the specialized training of attorneys" and struggle to recognize technical legal claims like the Appointments Clause claims here. Requiring exhaustion would make the consequences of that disadvantage irreparable by precluding these claimants from vindicating their rights under the Appointments Clause in federal court proceedings. And we have little reason to think those rights will elsewhere be vindicated: While ALJs must probe for meritorious arguments more carefully where claimants are unrepresented, even the most diligent ALJ is unlikely to raise a *sua sponte* objection to his own appointment.

*Id.* (internal citations omitted). On the other hand, the court found the government's interest in requiring exhaustion to be low:

> Traditionally, two governmental interests favor exhaustion: deference to agency expertise and opportunity for agency error correction. Neither is implicated here.
> The first, deference to agency expertise, is rendered irrelevant here by the well-worn maxim that constitutional questions, including Appointments Clause challenges, are "outside the [agency's] competence and expertise." "[C]ourts are at no disadvantage in

9

> answering" Appointments Clause claims, and the Commissioner therefore has no legitimate basis to argue that agency expertise requires that those claims be exhausted before the agency.
>
> The second traditional rationale for exhaustion is no more applicable. We need not give an agency the opportunity for error correction that it is incapable of providing—i.e., where it is not "empowered to grant effective relief." This case falls squarely in that category: At neither the trial nor the appellate levels could the SSA's administrative judges cure the constitutionality of their own appointments, whether by reappointing themselves, *see Lucia*, 138 S. Ct. at 2051 (explaining that "the President, a court of law, or a head of department" must appoint ALJs), or by transferring the case to a constitutionally appointed ALJ.

*Id.* at *5 (internal citations omitted).

In *Cirko,* the Commissioner argued that a ruling rejecting an exhaustion requirement would open the floodgates to the "'many hundreds of cases in federal district courts in which disappointed claimants have sought to raise unpreserved Appointments Clause challenges for the first time,'" *id.* at *6, and that those "cases, we are told, are 'just the tip of the iceberg' because ALJs issued 493,000 appealable dispositions in fiscal year 2018 and, without an exhaustion requirement, 'every disappointed claimant could obtain a do-over before a new ALJ simply by raising a *Lucia* claim in district court.'" *Id.* The Third Circuit panel responded that

> we deal in facts, not hyperbole, and, on inspection, the purported flood is actually a trickle. Under the applicable procedural rules, claimants must appeal the Appeals Council's decision to the District Court within sixty days, 42 U.S.C. § 405(g), and *Lucia* was decided more than a year ago, 138 S. Ct. at 2044. That means every claimant whose benefits were denied prior to *Lucia* has long since either filed an appeal in district court or become time-barred from doing so. Those whose claims were still at the initial stage will have their claims adjudicated by a constitutionally appointed ALJ. And the SSA, in the meantime, has promulgated administrative guidance instructing that claimants with cases then pending on administrative appeal would have their claims reviewed *de novo* before the now-duly-appointed Appeals Council.

10

*Id.* The Third Circuit therefore held that, in the social security context, "Appointments Clause challenges – given their importance to separation of powers and, ultimately, individual liberty – are claims for which exhaustion is not required." *Id.* at 4.

The undersigned agrees and adopts the *Cirko* decision's reasoning here. Based on the reasoning set forth above, Plaintiff has appropriately challenged the appointment of her ALJ, and the Commissioner does not dispute the merits of that challenge. Remand is required on this issue. *Accord Janice Marie J. v. Saul*, No. 3:19-cv-745-B-BN, 2020 WL 874811 (N.D. Tex. Jan. 30, 2020), *rec. accepted*, 2020 WL 869819 (N.D. Tex. Feb. 21, 2020).

**Recommendation**

The hearing decision should be reversed and this case remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure

to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: June 23, 2020

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE